IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEDRA ROSS, | No. CIV S-09-1742-CMK |
| Plaintiff, | |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 24) and defendant's cross-motion for summary judgment (Doc. 26). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits protectively on February 27, 2007 alleging an onset of disability on February 7, 2004, due to physical and mental impairments. (Certified administrative record ("CAR") 63, 67, 86-92, 97-108). Specifically, plaintiff claims disability based on impairments due to Schizoaffective disorders and right ankle injury. (CAR 102). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff requested an administrative hearing, which was held on December 16, 2008, before Administrative Law Judge ("ALJ") L. Kalei Fong. In a March 23, 2009 decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

1. The claimant has not engaged in substantial gainful activity since February 27, 2007, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: low back pain, right ankle pain status post fracture, a bipolar disorder with psychotic features, a depressive disorder and a substance abuse disorder in remission (20 CFR 416.921 *et seq*.).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). Specifically, the claimant is limited as follows: claimant is limited to standing, walking and sitting for six hours per day; lift and carry 20 pounds occasionally, 10 pounds frequently; precluded from climbing ladders, ropes or scaffolds; all other postural activities are limited to occasional. As a result of her mental impairments, the claimant is unable to perform skilled and semi-skilled work but remains capable of performing unskilled work. She is also limited to jobs which do not require contact with the public.

5. The claimant has no past relevant work experience (20 CFR 416.965).

6. The claimant was born on August 19, 1971 and was 35 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

///

---

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

3

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 27, 2007, the date the application was filed (20 CFR 416.920(g)).

(CAR 14-26). After the Appeals Council declined review on April 24, 2009, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

## III.  DISCUSSION

Plaintiff argues the ALJ erred in several ways: (1) the ALJ failed to include all the limitations in the RFC which he purported to adopt; (2) the ALJ failed to include limitations in the RFC assessed by the nurse practitioner and treating psychiatrist; and (3) the ALJ erred in using the Grids and not calling a vocational expert (VE) to testify.

### A.  RESIDUAL FUNCTIONAL CAPACITY (RFC)

Residual functional capacity (RFC) is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities").  Thus, residual functional capacity describes a person's capabilities in light of his or her limitations.

Here, the ALJ found plaintiff has the RFC to perform light work.  In addition, plaintiff was found limited as a result of her mental impairments to unskilled work which does not require contact with the public.  The support cited for this RFC was Dr. Canty's consultative psychiatric evaluation.  Dr. Canty examined plaintiff on June 26, 2007, and noted plaintiff:

> "has a long history of drug abuse . . . . I suspect her long-standing poor functioning is due to substance abuse.  Her auditory and visual hallucinations sound characterological.  She probably has a personality disorder.  She does endorse several symptoms of PTSD but it seems odd that she didn't mention this to her psychiatrist last November. . . . Her performance today was fair.  She had difficulty with the three-step task and three objects at five minutes.  She appeared slightly depressed.  She clearly has long-standing drug and psychosocial stressors.  She maintains that she is clean and sober but has no monitoring or treatment.  I certainly wonder about this.  At the very least her psychiatric provider should monitor her substance abuse status with random testing. (CAR 209).

Dr. Canty's functional assessment was as follows:

> She is cognitively able to manage money but unless she has drug treatment or monitoring I would recommend a professional payee if funds are awarded.  Her current level of functioning is difficult to assess.  This is because her history is essentially negative for work.  I suspect this is due to psychosocial and

> substance abuse problems. She does endorse PTSD symptoms and these would clearly degrade her functioning to some degree. I also wonder about her sobriety. I suspect that at best she would only be able to do very simple, one or two step, nonpublic tasks. She says her last job was earlier this year working at a mall. This setting would be inappropriate given her PTSD symptoms. She would clearly do better working in a quiet, low stress, isolated environment. Clean and sober and motivated she probably could do work. She would tolerate one or two coworkers but not many more. I don't think her PTSD symptoms would significantly interfere with attending or completing appropriate work if she was highly motivated and psychosocially stable. However, she has been homeless for at least a year and says that she has generally stayed with family and friends for many years. It doesn't appear that she has been psychosocially stable for any length of time during her adulthood. Of course, if she is abusing drugs her functioning would be far worse than stated above. (CAR 209).

The ALJ addressed Dr. Canty's opinion in the written decision. The ALJ noted Dr. Canty's observation that there was a possibility of ongoing substance abuse, but found credible plaintiff's testimony that she has been clean and sober since late 2006.[3] The ALJ also noted that Dr. Canty's assessment took into account that plaintiff's treating sessions showed very few abnormal findings, and that the CE's also took into account plaintiff's anxiety around large groups of people, but that PTSD was not supported by the record. Based on this information, the ALJ found plaintiff capable of performing simple work.

Plaintiff's first argument is that the ALJ's assessment was too general, and that Dr. Canty's assessment was more specific and less optimistic than the ALJ's finding that plaintiff is capable of performing unskilled work without public contact. She argues Dr. Canty actually determined she was *at best* able to do very simple, one or two step, nonpublic tasks, and that was

---

[3] The undersigned notes that if drug or alcohol use is a contributing factor material to a determination of disability, an individual is not entitled to benefits. See 20 C.F.R. §§ 404.1535 and 416.945; see also Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998). The burden is on the plaintiff to demonstrate that drug and alcohol addiction is not a material factor by showing that an impairment would have been disabling even if drug and alcohol use ceased. See Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007). To do so, the plaintiff would have to demonstrate that the impairment "would remain during periods when she stopped using drugs and alcohol." Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001) (citing Sousa, 143 F.3d at 1245).

assuming she was highly motivated and psychosocially stable, which she had not been for any length of time.

Essentially, plaintiff's argument is that the ALJ's finding that she is capable of unskilled work is not as specific as Dr. Canty's assessment that she is capable of simple, one or two step, non-public tasks. However, as the defendant points out, the definition of unskilled work is that which needs little or no judgment to do simple duties. See 20 CFR § 416.968(a). In addition, while plaintiff is correct that Social Security Rule (SSR) 96-8p suggests the ALJ must first identify an individual's functional limitations then express the limitations in terms of the exertional levels of work, and express non-exertional capacity in terms of work-related functions, here the ALJ essentially did so. While the RFC did not explicitly detail plaintiff's abilities on a function-by-function basis, the ALJ did discusses her abilities in the opinion and from that discussion determined the RFC. Specifically, as to plaintiff's mental abilities, the ALJ stated she agreed with the consultative psychiatric physician and agency physician who opined that plaintiff retained the abilities to perform simple unskilled work. In addition, the ALJ discussed each of the medical opinions in the record, noting Dr. Canty's opinion that plaintiff "would likely be limited to very simple, one or two step, nonpublic tasks." (CAR 21).

Similarly, plaintiff's argument that the RFC failed to include any of the specific work-related functional limitation is not supported by the record. The only significant limitation Dr. Canty or the agency physician found was related to her ability to interact with the general public, which was included in the RFC. The other limitations noted were mild to moderate, not marked. The undersigned also takes into consideration that SSR 96-8p explains that the RFC represents the most, not the least, that an individual can do despite her limitations or restrictions. Thus, there was no error in ALJ's determination based on the best of plaintiff's abilities.

The undersigned finds the RFC was adequately assessed, and was supported by the record. Thus, no reversible error occurred.

/ / /

1               Plaintiff's second argument related to the RFC was that the ALJ failed to include
2 the limitations assessed by the nurse practitioner and treating psychiatrist.  She argues the nurse
3 practitioner, Ms. Klee, opined the plaintiff had anxiety and fear around people and preferred to
4 isolate, and had a GAF of 40.  She argues Ms. Klee's assessment, wherein she placed a question
5 mark in the "none" column representing plaintiff's abilities in various categories was sufficient to
6 clearly state her opinion was that plaintiff did not have those abilities.  The undersigned does not
7 agree.  It appears that, as the ALJ found, Ms. Klee was unable or unwilling to provide such an
8 assessment, a determination which is supported by Ms. Klee's statement on the form that she is
9 "unable to determine [limitations] based on assessment."  (CAR 280).  The only exception to this
10 was Ms. Klee's check mark under the ability to relate predictably in social situations.  The ALJ
11 adequately addressed Ms. Klee's assessment, including that Ms. Klee declined to provide a
12 statement of plaintiff's functional limitations, and that determination is not altered by the ALJ's
13 failure to specifically address this one check mark on the form.
14               Plaintiff also argues the ALJ erred in failing to consider the GAF assessment of
15 40, which was assessed not only by Ms. Klee, but also by Dr. Pacifico.  Contrary to plaintiff's
16 arguments, a GAF score does not equate to a finding of disability.  "While a GAF score may be
17 of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.
18 Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the
19 RFC inaccurate."  Howard v. Comm' n of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002); see also
20 Bayless v. Barnhart , 427 F.3d 1211, 1217 (9th Cir. 2005) (finding a GAF of 40 does not
21 necessarily require a determination of disability).  Here, while the ALJ did not specifically
22 address Dr. Pacifico's assessment of plaintiff's GAF, the ALJ adequately discussed plaintiff's
23 GAF score of 40, and rejected it.  The undersigned notes that in addition to the GAF score of 40,
24 the CE also assessed plaintiff with a GAF of possibly 55.  In addition, the ALJ discussed
25 plaintiff's recent treatment records, noting the evidence of medical improvement.
26 / / /

Thus, the undersigned finds no error in the ALJ's RFC, which is supported by the record.

### B.   MEDICAL-VOCATIONAL GUIDELINES (GRIDS)

Finally, plaintiff contends the ALJ improperly relied on the grids and should have obtained the testimony of a vocational expert due to significant non-exertional limitations.

The Medical-Vocational Guidelines ("the grids") are in table form. The tables present various combinations of factors the ALJ must consider in determining whether other work is available. See generally Desrosiers v. Sec'y of Health and Hum. Svcs., 846 F.2d 573, 577-78 (9th Cir. 1988) (Pregerson, J., concurring). The factors include residual functional capacity, age, education, and work experience. For each combination, the grids direct a finding of either "disabled" or "not disabled."

There are limits on using the grids, an administrative tool to resolve individual claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ may rely on the grids, however, even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations are not so significant as to impact the claimant's exertional capabilities.[4] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v.

---

[4] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c) (2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988) (requiring the use of a vocational expert where claimant only has nonexertional limitations); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).

Here, the ALJ determined that plaintiff's non-exertional limitations restricted her abilities to work with the public, in unskilled light work.  Contrary to plaintiff's contention, that the existence of a non-exertional limitation makes VE testimony mandatory, a VE is only required where the non-exertional limitations "significantly limits" the range of work available. The ALJ determined that plaintiff was capable of performing unskilled work, limited to jobs which do not require contact with the public.  In determining the applicability of the grids, the ALJ noted that plaintiff's "ability to perform all or substantially of the requirements of [light] work has been impeded by additional mental limitations." (CAR 25).  The ALJ further stated:

> Even with the limitation to simple, entry level, unskilled work, and the limitation from jobs which require public contact, there are still a significant number of jobs that the claimant is able to perform. Section 202.00 of Appendix 2 provides that approximately 1,600 separate sedentary and light, unskilled occupations can be identified, with each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or within 30 days.  When read in conjunction with Social Security Rule 85-15, setting forth the basic mental requirements for unskilled work activity, the undersigned concludes that the occupational base available to the claimant is not significantly eroded by her additional mental limitations. (CAR 26).

In addition, SSR 85-15 noted that unskilled work generally involves dealing primarily with objects, rather than data or people.  Thus, the ALJ's finding that plaintiff is limited in her abilities to deal with the public is sufficiently addressed by finding that she has the capability of performing unskilled work.  This is especially true as the ALJ determined plaintiff's limitations do not significantly erode her abilities to perform the unskilled work activity.  While perhaps not the only rational interpretation, where there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld.  See Thomas v. Barnhart, 278 F.3d 947, 954

(9th Cir. 2002).

Therefore, the undersigned finds no error in the ALJ's use of the grids given plaintiff's RFC, which found plaintiff had both exertional and minimal non-exertional limitations. As discussed above, the RFC is supported by substantial evidence. The ALJ properly applied grid rule 202.17 in finding plaintiff is not disabled.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 24) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 26) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 21, 2011

*(signature)*

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE